UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

WARREN EDWARD IVEY,

                                        Plaintiff,

        vs.                                                         9:02-CV-470
                                                                    (J. Sharpe)

JAMES LYMAN,

                                        Defendant.

_____

APPEARANCES                             OF COUNSEL

WARREN EDWARD IVEY
Plaintiff pro se[1]

GLENN T. SUDDABY                        BARBARA D. COTTRELL
United States Attorney                  Asst. U.S. Attorney
Northern District of New York
Attorney for Defendant

GUSTAVE J. DI BIANCO, United States Magistrate Judge

## REPORT-RECOMMENDATION

        This matter was referred to me for report and recommendation by the Honorable

Gary L. Sharpe, United States District Judge pursuant to 28 U.S.C. § 636(b) and

LOCAL RULES N.D.N.Y. 72.3(c).

        In this civil rights complaint, plaintiff alleges that he was subjected to excessive

force by defendant Lyman during a strip search conducted on March 31, 1999 after

plaintiff had been arrested by members of the Capitol District Drug Enforcement Task

_____

[1] Plaintiff was originally represented by counsel in this action, however, counsel granted permission to withdraw on November 4, 2003. (Dkt. No. 17). Plaintiff is now proceeding pro se, but his original pleading was drafted by counsel.

Force (DETF).

Plaintiff seeks substantial monetary damages.

Presently before the court is defendant's motion for summary judgment[2] pursuant to FED. R. CIV. P. 56. (Dkt. No. 34).  Plaintiff has responded in opposition to the motion and has made a cross-motion for summary judgment. (Dkt. Nos. 37, 38). For the following reasons, this court will recommend denying both motions for summary judgment.

## DISCUSSION

1. <u>**Summary Judgment**</u>

Summary judgment may be granted when the moving party carries its burden of showing the absence of a genuine issue of material fact.  FED. R. CIV. P. 56; *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir. 1990) (citations omitted).  "Ambiguities or inferences to be drawn from the facts must be viewed in the light most favorable to the party opposing the summary judgment motion." *Id*.  However, when the moving  party has met its burden, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Electric Industrial Co.,*

---

[2] Defendant's Notice of Motion states specifically that his motion is one for summary judgment and does not mention any other basis for dismissal.  However, defendant's memorandum of law states that the motion is based both on Rule 12(b)(6) and Rule 56. Defendant's Memorandum of Law at 5.  Since defendant has submitted a great deal of material outside the complaint, and this court finds that this material must be considered, I will consider only that this motion is based on Rule 56, requesting summary judgment.  In any event, plaintiff has cross-moved for summary judgment.

*Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). At that point, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Id.*

## 2. Facts

Defendant states that he was employed as a detective for the Albany, New York Police Department. The United States Drug Enforcement Administration was conducting a joint drug investigation with the DETF and the Colonie, New York Police Department. Defendant Lyman was assigned to the DETF. On March 31, 1999, plaintiff was arrested by members of the DETF after officers conducted a controlled purchase of a quantity of crack cocaine from plaintiff.

The arrest report states that the arrest took place at 6:30 p.m. Defendant's Ex. 1 at 3. After plaintiff's arrest, he was brought to the DETF office at 28 Essex Street in Albany, and placed in a "Confidential Source Room." According to defendant, information was received from another arrestee[3] that plaintiff was well known to carry crack cocaine in his anal area. Defendant Lyman was then called to the Confidential Source Room to conduct a strip search of plaintiff. At least one of defendant Lyman's supervisors, James Francis DiCaprio, was present at the strip search. Defense counsel has included as part of her exhibits the transcript of an interview with Supervisor

---

[3] According to defendant, the arrestee who gave the police the information was beginning to cooperate with law enforcement officials.

DiCaprio conducted in this matter by DEA Inspectors Christopher J. Giovino and Timothy J. Landrum.

The complaint alleges that plaintiff was strip searched once at 6:00 p.m. and then again later by this defendant. Complaint at ¶¶ 7-8.  In the complaint, plaintiff alleged that during the "second" strip search, defendant Lyman "inserted" a coat hanger into plaintiff's rectum during the strip search. Complaint at ¶ 8.  Plaintiff also claimed that after the rectal inspection, defendant Lyman punched plaintiff in the face for no apparent reason and shouted racial epithets at him. Complaint at ¶ 9.  Plaintiff stated that defendant Lyman had to be physically removed from the interrogation room by other officers. Complaint at ¶ 10.

The complaint contains two causes of action, one for excessive force and one for unreasonable search and seizure.

**3.   Jurisdictional Basis**

Plaintiff brought this action under both 42 U.S.C. § 1983 and *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971). Section 1983 is the jurisdictional basis for actions claiming constitutional violations against persons acting "under color of state law." 42 U.S.C. § 1983.  *Bivens* allows for constitutional claims against federal defendants.

The problem in this case is that defendant is employed by the Albany Police Department, and thus would generally be acting under color of state law in his

4

capacity as a police officer.  However, because he was working with the DEA and assigned to the DETF, he is considered to be acting as a federal agent.  The DEA is authorized by statute to enter into task force agreements with state and local law enforcement agencies to undertake joint investigations. *See Bordeaux v. Lynch*, 958 F. Supp. 77, 84 n.5 (N.D.N.Y. 1997)(citing 21 U.S.C. § 873(a)(7)).  Under these agreements, local law enforcement officers on detail to a federal agency are deemed employees of the federal government for purposes of the Federal Tort Claims Act and any other "tort liability statute." *Id.* (citing 5 U.S.C. § 3374(c)).

In this case, the federal government has chosen to undertake the defense of Detective Lyman, and it would appear that he is considered a federal employee when acting in the capacity of a DETF member.  Thus, section 1983 is ***not*** an appropriate jurisdictional basis, rather *Bivens* is the appropriate jurisdictional basis for this action, and the case will be considered as a *Bivens* action notwithstanding that it was filed under both *Bivens* and section 1983.  Insofar as the complaint is read to allege claims under section 1983, those claims may be dismissed.

Generally, case law under 42 U.S.C. § 1983 applies to Bivens cases. *Chin v. Bowen*, 833 F.2d 21, 24 (2d Cir. 1987)(quoting *Ellis v. Blum*, 643 F.2d 68, 84 (2d Cir. 1981)); see also *Butz v. Economou*, 438 U.S. 478, 504 (1978).  Thus, whether the case is characterized as a *Bivens* action or an action under section 1983, the analysis will be the same.

5

**4.**     **Excessive Force and Unreasonable Search**

      The court must first determine what constitutional amendment protects the plaintiff in this case.  The Supreme Court made it clear in *Graham v. Connor*, 490 U.S. 386, 395 (1989), that all claims that law enforcement officers used excessive force during an arrest, investigatory stop, or other seizure of a free citizen, must be analyzed under the Fourth Amendment.  In *Graham*, the Court specifically did not resolve the question of whether the Fourth Amendment continues to protect pretrial detainees whose detention has extended beyond the point that arrest ends and pretrial detention begins. *Id.*

      Subsequently, courts have distinguished between individuals who have been arrested, but have not been arraigned or formally charged and those who are post-arraignment pretrial detainees. *See Ali v. Szabo*, 81 F. Supp. 2d 447, 454 (S.D.N.Y. 1999), *adopted* Jan. 11, 2000.  In *Blake v. Base*, the court held that the Fourth Amendment continues to protect individuals who are arrested, but who have not been arraigned or formally charged and who remain in custody of the arresting officers, while the Fourteenth Amendment protects those pre-trial detainees whose pretrial custody is ordered by a judicial officer. *Blake v. Base*, 90-CV-8, 1998 U.S. Dist. LEXIS 14859, *37-40 (N.D.N.Y. Sept. 14, 1998).  In this case, at the time of the alleged conduct, plaintiff had just been arrested, had been placed in a confidential informant's room, and was still in police custody.  Thus, plaintiff's claims in this

action arise under the Fourth Amendment.

The Supreme Court has stated that a use of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness. *Graham v. Connor*, 490 U.S. 386 (1989).  Excessive force has been defined as more force than would have appeared to a reasonable officer in similar circumstances to be necessary to accomplish the lawful purpose intended. *Davis v. Rodriguez*, 364 F.3d 424 (2d Cir. 2004).  Courts have also recognized the importance of guarding against unreasonable strip searches. *Bolden v. Village of Monticello*, 344 F. Supp. 2d 407, 416-17 (S.D.N.Y. 2004).

In *Bell v. Wolfish*, 441 U.S. 520 (1979), the Supreme Court held that under the Fourth Amendment, a reasonableness analysis must balance the need for a particular search with the invasion of personal rights implicated by that search.  Although the test cannot be precisely defined, the definition of reasonableness turned upon the scope of the intrusion; the manner in which the search was conducted; the justification for initiating the search; and the place where the search was conducted. *Id.* at 559.  A lawful arrest creates the presumption of reasonableness of an attendant search, however, that presumption may be rebutted by showing that the search was conducted in an unreasonable manner. *Bolden*, 344 F. Supp. at 417.

In this case, plaintiff alleges that the search in question was conducted in an unreasonable manner.  He does not appear to challenge the fact that the strip search

occurred, but he alleges that defendant Lyman used a wooden coat hanger to pry open plaintiff's buttocks in order to conduct the visual body cavity search.  It is clear from plaintiff's later documents and from plaintiff's written statements subsequent to the incident that plaintiff is **not claiming** that the defendant inserted any part of the hanger into plaintiff's anal area. *See* Defendant's Ex. 4 (Plaintiff's Answers to Defendant's Interrogatories at No. 9).

In an excessive force case, plaintiff must prove some injury, but it does not have to be a "significant" injury in order to prevail. *See Landy v. Irizarry*, 884 F. Supp. 788, 799 n.14 (S.D.N.Y. 1995).  However, it has been stated that an **unlawful strip search** is "in and of itself, an egregious violation of Plaintiff's constitutional right to be free from unwarranted government intrusion of his person." *See Kelleher v. Fearon*, 90 F. Supp. 2d 354, 364 (S.D.N.Y. 2000).

In this case, defendant argues that the case should be dismissed because plaintiff has not met **his burden** of showing that a material question of fact exists. However, as stated above, the standard in a motion for summary judgment requires that before the burden shifts to the non-moving party, the moving party must satisfy **its burden** of showing that **no material question of fact exists** and that the moving party is entitled to judgment as a matter of law. *Thompson, supra. See also Giannullo v. City of New York*, 322 F.3d 139 (2d Cir. 2003). The court must consider all ambiguities and inferences in favor of the non-moving party. *Id.*  It is true that a defendant may move

8

for summary judgment on the ground that plaintiff has failed to present *any* evidence of an element of plaintiff's claim. *Giannullo*, 322 F.3d at 141 n.2.  Pro se plaintiff in this case has attempted to submit medical evidence that he believes supports his claim that the search occurred as he states in his complaint.  Whether that evidence ultimately serves the purpose that plaintiff intends is not a question for summary judgment.

Defendant argues that it is only plaintiff's unsubstantiated word that a second search occurred or that defendant punched plaintiff in the face or used the coat hanger during the search.  The court would point out that plaintiff's medical records indicate that on April 12, 1999, plaintiff did complain of a jaw injury and pain associated with that injury, allegedly occurring after a "recent trauma." Defendant's Ex. 5.  Plaintiff continued to complain of pain in his jaw and face into the next two months. *Id.*  The medical records submitted by plaintiff also show that on April 4, 1999, he complained upon admission to the Albany County Correctional Facility, of a right jaw injury occurring on March 31, 1999. (Dkt. 37 at p.26).  Although x-rays showed no fracture (Defendant's Ex. 5), and plaintiff might not be able to ultimately prove that this injury or this pain resulted from a punch in the face, the court cannot make this determination on a summary judgment motion without making findings of fact that this court would not be entitled to make.

There is no dispute that a visual body cavity strip search occurred.  Defendant

9

and his supervisor, who was present at the search, state that only *one* search occurred, and it did *not* occur as plaintiff alleges.  If the search occurred as plaintiff alleges, a jury could find that the search was conducted in an unreasonable manner.  Using a coat hanger to separate plaintiff's buttocks could be viewed as unreasonable in any circumstances.  In order to find that the search was *not* conducted in the manner that plaintiff suggests, the court would have to make a credibility determination, based upon plaintiff's allegations, versus defendant's allegations and the statements of plaintiff's supervisor during the subsequent investigation of plaintiff's complaint at the agency level. Defendant's Ex. 6.

With respect to any adverse effects or damages from the alleged improper strip search, although it appears to be true that plaintiff did not mention the incident to anyone initially, plaintiff has submitted some medical records dated in March of 2000 that refer to plaintiff's "sexual assault" and diagnose PTSD (post traumatic stress disorder). (Dkt. No. 37 at pp. 37-38).  Later medical records also refer to this disorder and indicate that plaintiff was prescribed medication for PTSD. *Id.* at pp.43-56. Although it is unclear to what "sexual assault" the records are referring, and it is also not clear whether plaintiff could ultimately show that his diagnosis in 2000 was related to the alleged 1999 conduct by defendant, however, it is not for this court at this time to make such a determination.

The fact that plaintiff did not mention the allegedly improper strip search to

anyone initially, may affect his credibility, but again, credibility is not a determination that may be made on summary judgment.  Defendant claims that plaintiff's complaint was filed by an attorney and therefore, plaintiff should not be given the leniency that the court affords to pro se litigants.  However, plaintiff is pro se now, and he has attempted to oppose defendant's motion for summary judgment.  He has submitted records which may or may not ultimately help him with his claims, but at this time, the court must give him the appropriate leniency that is afforded to pro se litigants.

5.    **Section 1981**

Plaintiff's complaint alleges a violation under 42 U.S.C. § 1981.  In order to establish a claim under section 1981, a plaintiff must establish that he is a member of a racial minority, that the defendant intended to discriminate on the basis of race, and that the discrimination concerned one or more of the activities enumerated in the statute. *Brown v. City of Oneonta*, 221 F.3d 329, 339 (2d Cir. 1999).  In order to plead a case under section 1981, plaintiff must allege instances in which "similarly situated" non-minorities were treated differently than plaintiff. *Id.* (citing *Albert v. Carovano*, 851 F.2d 561, 573 (2d Cir. 1988)).

Although plaintiff in this case makes some conclusory allegations that defendant shouted racial epithets at him, there is no indication that defendant's alleged actions were based on race or that other individuals were treated differently than plaintiff.  Thus, plaintiff's claims under section 1981 may be dismissed.

11

**WHEREFORE,** based on the findings above, it is

**RECOMMENDED,** that defendant's motion for summary judgment (Dkt. No. 34) be **GRANTED** only to the extent that the complaint alleges claims under section 1981 and section 1983, and it is

**RECOMMENDED,** that defendant's motion for summary judgment (Dkt. No. 34) be **DENIED IN ALL OTHER RESPECTS**, and it is further

**RECOMMENDED,** that plaintiff's cross-motion for summary judgment (Dkt. No. 38) be **DENIED.**

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)(citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: June 1, 2005

_____
Hon. Gustave J. DiBianco
U.S. Magistrate Judge